Case number 22-3017, United States of America v. Johnnie Gamble, Appellant. Mr. Axsom, for the Appellant. Ms. Gallo, for the Appellant. Good morning, counsel. Mr. Axsom, please proceed when you're ready. May it please the court, counsel. Tony Axsom on behalf of Appellant Johnnie Gamble. I'd like to reserve 2 minutes for rebuttal. Appellant Johnnie Gamble was seized when 6 armed officers in tactical gear came upon him quickly at night in a limited area of sidewalk and singled him out. Specifically, Officer Tejada singled him out. The specific moments of seizure were, first, when Officer Tejada positioned himself to stop Mr. Gamble's movement away from the officers. Second, when Officer Tejada announced, just making sure there ain't no guns, that's it, and then asked Mr. Gamble if he had a gun. This accomplished two purposes. It accused Mr. Gamble of a crime and suggested that Mr. Gamble needed to remain in place to dispel the officer's accusations. And the third moment of seizure was when Mr. Gamble said that he did not have a gun and Officer Tejada said, let me see your waist. So you want us to hold that he was seized when Tejada walks up to him and singles him out before he even utters a word that's a seizure? In this case, there was a seizure at that point. And I will say that in general, when an officer approaches someone and doesn't utter a word, there's a seizure. But in this case, Mr. Gamble was backing away with his hands up and Officer Tejada came and stood in his path. So I would say to the court, yes, if an officer walks up to someone and stands in the path, their path of movement, that officer is conveying without words that I want you to stop. Mr. Gamble did stop. What was Officer Tejada supposed to do that would have been compliant with the Fourth Amendment? Well, this court has suggested that officers come up and if it's a consensual encounter, make it consensual, come up and say, hi, we're out here, we're investigating this. Would you mind talking to us? You are free to go about your way if you do not want to talk to us. None of that occurred. This was immediately like multiple officers descending at once in tactical gear at night. The atmospherics of the situation did not convey a consensual encounter. They conveyed the exact opposite, a coercive encounter that everyone there should comply with. Let's zero in on the moment that Officer Tejada says, let me see your waist. The government says that that's not a seizure at that point. What's your best case or cases that it was a seizure at that? Well, this court's case in the United States, if you would, where an officer arrives at a location and. See someone walking away and says, stop, freeze, and the person stops and freezes and immediately drops the gun. The command itself was a show of authority. And when the person stopped, that was submission to the authority. And this court found that that was a seizure. There are other cases as well. We've also said that the question, can I see your waistband does not demonstrate a seizure. And I think we said that in gross, and so if that I take, we could take that as a given, at least for now that a request. And I see your waistband would not. Establish a seizure. And so I guess my question is, can the words let me see your waistband? Can they ever be a question if they're framed? If they're said very politely, if just leave off, can you let me see your waistband? If it's just let me see your waistband, can they be a question? No, there's always an imbalance between officers in uniform and certainly in this situation, but let's just say an officer in an officer. And. And even if there's words have meaning, I mean, even if there's an imbalance in power. It's true that notwithstanding that imbalance in power, the words, could I see your waistband? Are not indicative of a seizure. A question this court has held is not indicative of a seizure. It is not necessarily a seizure. I don't think it's gone so far as to say questions are never a seizure. Right. It doesn't have to be a seizure. But this is not a question. And can it never be a question? Can it work? A command? I'd have to say a command by a police officer, given the imbalance in power. Given it's logical that that we want people to obey commands by police officers. And if a command is not a show of authority, which somebody has to comply with. So, I think I think I might agree with you that if it's a command, then I think I might agree with you that if it's a command, then it's shows a seizure. I guess my question is. There's a question, a request on one hand and a command on the other hand and words. It seems to me there are words that could be either. It could be a command. It could be a question. You just have to look and listen and figure out in context. Was it framed as a question or was it framed as a command? Well, I think the Supreme Court has said that it's the tone of the officers of the words chosen and. Words chosen again have to have me. This is this was not something that began with. If the officer was, if this was a consensual encounter and. My client was free to resist the command. And then it's a very simple thing for the officer to say, may I see the way stand. That is not what occurred. It's a very simple thing to advocate and. Again, the language has to have meaning and. A declarative statement or command. It's simply never a question. Here's how the district court characterized it at J. 175. And then at J. 175. He says, and at that point, he specifically tells the defendant and it wasn't a hostile tone of voice. But he clearly makes a demand show me your waste. So, what do we do with that? Well, you're not saying that any of that, but to the extent that's a factual finding is clear air, right? No, I don't I don't think the government argues that that's clear. I don't take issue with either the finding that it's a demand. Or that the tone is nice, but same things nicely. Does it change that it is that you are requiring someone to do some. Mr. if we assume that it was a demand. And the 1st time the officer demanded that gamble show his waistband was a show of authority. And then we assume that the seizure occurred when he actually. Raised his shirt and showed his waistband. It seems to me that there were 3 factual findings in the record. That could amount to reasonable suspicion that would support. That seizure 1st, there's a finding that we're in a high crime area quote, specifically related to gun possession. Both violent and nonviolent related gun matters. The 1st, 1, 2nd, the court found it was unusual when gamble backed away with his hands up in response to the police arrival. And the court did say that that could be consistent with consciousness of guilt. I'm paraphrasing here, but said that that's subject to other interpretations as well. The 3rd, and most importantly, the court said it was quote, unquote, suspicious. When gamble did not immediately comply with the directive, but instead pulled up his pants and quote. Was seeking to try and actually conceal his waistband, which occurred here. So, those 3 findings of fact, which nobody is saying we're clearly erroneous. Why don't those add up to reasonable, reasonable suspicion that would support a seizure? When at that point of seizure, when he raised his shirt. Well, the 1st thing I'd say about the neighborhood in the high crime designation. That's just a contextual matter. And of course, certainly had to look at the circumstances of this case decide whether. But the Supreme Court has held in Wardlow that that's a factor and find a reasonable suspicion. It's certainly that's 1 factor and then there's 2 more. But the question is, is how do the facts of this case are they influenced by the high time designation? We'll call it. Slowly backing away does not become a crime because you're in a high primary. It's not a crime, but the court found that it was unusual and is consistent with. Well, that would place my mind if he has the right to walk away. It can't be that then walking away is a basis for reasonable suspicion. The Supreme Court has also said that defendants have the right to walk away. When police arrive, they don't have to stay and talk or do anything. So, for that to be a factor of. I can't say that it's never. After the reasonable suspicion analysis, but it's not significant here. I'd say that is entitled to very little, if any way, under these circumstances. I think in all of these 4th Amendment analyses, there's behavior that could be innocent in some context, but could be construed as suspicious in others. I think that's just a normal part of this analysis. And here the court said it could be construed in different ways. It could be construed as suspicious behavior, trying to suggest that he hadn't done anything when, in fact, he did. Because I think it's unusual just because the police arrive on the scene and somebody backs away from them and not just backs away. Like, he doesn't want to have contact with them, but also is raising his hands in a manner. I would suggest or could suggest that he was trying to conceal the fact that he was involved in criminal behavior. Although it could be construed otherwise as well. So that's a finding by the district court. I fully appreciate that. There is no explanation. The government didn't elicit from Officer Tejada. Why that? Why? What crime? Backing away signal. And really that gets to the heart of it because backing away is an innocent act. So if it is suspicious, what is it suspicious of? General suspicion, general hunches are not sufficient for reasonable suspicion. General hunches don't allow the police because something looks odd or something looks strange. There are many things that look odd and strange and officers don't have the right to stop someone to investigate that further. What officers have to do is to articulate. All that odd or strange behavior is criminal. And backing away on this in this very case, no one has explained how backing away is criminal. And so can you address the third factor, which was that he tried to actually feel his ways? I would the first thing that I would say about trying to conceal his ways is that is that's a very subjective. Finding it's the officer said it seemed to him that maybe he was trying to conceal his ways, but one, there is no concealing his ways was not concealing. So you're saying the finding by the district court is clearly erroneous. Seems that you're conceding it was supported by the testimony of the officer. The finding that the defendant was trying to do something is trying to conceal his ways. Trying to conceal his ways is different from concealing his ways. I'm making a decision between those two things. Concealing ways is an objective fact. I'll give government counsel preview of one of the questions I'll have for her, but isn't the more salient point that the demand was made before that happened. So how can that factor in as reasonable suspicions for? Let me see your waste? When he doesn't do that until after statements made that demand. I would say, yes, at that point, he has, he's, he's already been seized. The officer does not, or I should say, at that point, the officer did not have reasonable suspicion. And had made the man. So, what's the point of seizure? The point of seizure is, is obviously when there's submission, which is when you lift it is shirt. At the moment, he begins to submit. And if you look at government exhibit one, they refer to it as pulling up his pants, but it's an adjustment of his waist. And the officer gives an explanation for that. He says the pants are sagging. That is a logical explanation. He doesn't say, because there's a crime. How is that a submission to the show of authority? If the show of authority was show me your waistband, and you're not showing the waistband, you're instead adjusting your pants. That's not the point of seizure. I would take strong disagreement that you're not showing your waist. It was all one movement. He lifted his pants. It's the district court that held that. He was concealing his waistband at that point. The point of seizure is when he lifts his shirt. If the concealing happened before that, that goes to reasonable submission. I have to take this agreement that the court found that he was concealing. There is no finding that something was concealed trying to conceal and conceal. There is a distinction trying to conceal is is an assessment of what the defendant is trying to do. And concealing is from the officer's perspective. I could not see his waist. There is no testimony. There is no finding that there was any concealing in this case. So as as the client, in fact, Mr. Gamble, Mrs. Close above his belly button. The officer gives an explanation for why he has adjusted his waist. And the explanation is because it's because he's not wearing a belt. Can you address what the court should do if we find that the seizure does not occur until. He lifts his shirt. Do we. Is there a case that says we assess reasonable, articulable suspicion based on everything that happened before the submission to authority? Or do we assess reasonable, articulable suspicion as to what the officer knew at the time he made the demand? Is there a case that answers that question? I don't think there's a case that answers that question. What about who already? What already is the case where the youth is running? Yes. And there was no reasonable suspicion from before he was running. And then he throws an object and then he seized the Supreme Court held that the throwing of the object counts. And deciding whether there was reasonable suspicion because he didn't submit until he actually caught him. Isn't that exactly on point? No, it's not exactly on point because it already is a case of direct defiance of the officer's command. It is not doing something else in addition to complying with the officer's command. And here you have on the way, do you have any authority that distinguishes with the situation? Is there a case about doing something? No, I'm sorry. I don't have a case, but I think the facts of Hodority make clear that there is a command. A show of authority and then headlong flight away. Clear defiance, clear obstruction, clear noncompliance with the Supreme Court didn't phrase it that way. They just said the moment of leisure is when he submits to the show of authority. That's correct. That's the standard. That's correct. So, if it begins at the moment of seat of submission. The second that Mr. Gamble brings his hands down to submit to comply with. I'm not saying that. Under the formulation, the court is suggesting a deviation. Minor deviations from 100% compliance is would. Would be noncompliance would be a lack of submission. And that's not what occurred here. It wasn't even one second of him adjusting his waist as he lifted his clothes. It was on the way, lifting his hands. I'd say it was all one movement. So, submission is as he says in his mind, I am going to do what the officers says. I am pulling my hands down and because my pants are hanging low, I adjust them and lift my clothes. So, the submission begins as he brings his hands down. That's what I would say. If we're going to have to pinpoint that degree of precision, then yes, there was submission before he adjusted his pants. Adjusting his pants did not interfere with the officer's observation in any way. The officer, even closer to the end of the hearing, didn't identify adjusting his pants as a basis for the stop at all. The officer said it was the backing away and the cell phone in his hand. Make sure there's no additional questions for you at this time. We'll give you a little time for rebuttal. You're from the government now. Good morning. May please support council on behalf of the United States. Your honors, we're asking the court here to affirm the district court's judgment in this case. The district court did not care in denying Mr. Gamble's motion to suppress because the evidence that came in during the hearing establishes that there was no seizure prior to the second time that Mr. Gamble. So can I ask you about the first time, though? So the first time is let me see your waistband. And that's the first one that the district court called a demand on page 175. Judge Wilkins pointed out, but he clearly makes a demand. And then on page 180, he did make several demands of him to show his waistband. So if it's a demand. A demand is something that can't be said no to. It can't be declined if it's a demand. How is it not a seizure? Well, something that the your honor brought up when Mr. Axon was arguing is that under this court's case, similar questions. Can I see your waistband have been held to not? But that's a question. I mean, I guess to me, the thing is, and your brief says uses the word request a few times. And I totally get that because I'll tell you, if you watch the video and you listen to what's said, I think somebody could look at that and say the words are a question. Somebody could look at that and say the words are a demand. But it seems to me that a lot turns on whether one construes those words as a question on one hand or a demand on the other hand. And once let's just let's just play out the scenario where it's a demand as opposed to a question, because I'm doing those to be different. If it's a demand, how can it be that there's not a seizure? Because the definition of a demand is that this is something that you have to comply with. And if it's something that you have to comply with, it seems to me you're necessarily seized. I would disagree with that, your honor, because I think the judge can raise this and some of her questions. There's no seizure until the suspect has submitted to the show of the court. That I have to say, if that's true, then that would mean that if an officer tells the subject. You need to and with no suspicion whatsoever, just walks up to a random person on the street and said, you're going to have to show me what's inside that bag. And the suppose the person resists and says, I don't even know whether or not you're going to have to show me what's inside that bag. And then he opens the bag and there's something in there. It can't be that the submission didn't occur until he shows what's inside the bag. And therefore, it's OK to demand that the contents of the bag be shown that just that just turns the Fourth Amendment on its head. Right. So it can't be that the submission happens at the time that the review that you reveal the very thing that the officer demanded that you feel. I think that would certainly be certainly not the fact that we have here, what we have here as counsel conceded was that Mr. Gamble started adjusting his pants and contrary to what he said, there is testimony in the record from the officer that that adjustment of the pants. This is at page seventy one of the J.A. that the the officer understood that movement as an attempt to conceal something from him. And he did that before he complied with the man, which was if we're going to call it a command for the right to lift his his waistband. And so I would argue that it's not until that point when he actually does lift up his shirt, you know, that he potentially has been beat. And I don't think that I'm not arguing that it would never be that some walking up to somebody and saying, let me see your waistband would never be. You would that would never result in a seizure. But rather, that's not what we have here for a number of different reasons. Some of them related to the officer's interaction with Mr. Gamble and some of those reasons related to the circumstances surrounding. Before you get to that, what do we do with the district court saying he clearly makes a demand? Show me your waist. Isn't that a factual finding? I think I've answered that to two parts of the answer. The first, certainly the court was ruling from the bench and the court was taking pains to distinguish this case from me, where there were this court, as I understand it, held in that case that it was the persistence of the questioning, not necessarily the question itself that led to rather than transform the consensual encounter into a seizure. And the second part of that, my answer to that question, Your Honor, is that it's not just the words that are used, but also the tone of voice. And another factual finding that Judge Walton made here was that the officer's tone of voice would not was not hostile. But you're not answering my question. If if the first part of the sentence, it wasn't a hostile tone of voice is a factual finding because you like that. Isn't the next part of the sentence where he says, but he clearly makes a demand, show me your waist. Isn't that also a factual finding? I was tempted to say yes, but I think it's important to keep in mind that the court was. So the district court made a factual finding that there was a demand to show me your waist. I mean, that's what the district court said, but you're not saying that that's clear error. I didn't see that in your brief. We refer to the clear error standard. Did you ever argue in your brief that that the finding that that show me your waist or lift up your shirt? Let me see your waistband. That that the finding that that was, in fact, a demand was clear error. Is that in your brief? Oh, I see what you're saying. We did not. We did not. You did not argue that in the brief, your honor. But what I would say is that demands. Could be under argued it could be should be understood on a spectrum. You know, if if a police officer walks up to somebody and said, you know, in a hostile tone of voice, for example. You know, get get on the ground or said to somebody in an urgent tone of voice, move out of the way. Those are different. There's there's different results from those. I guess I don't know. I'm not following the spectrum. Once you were in it, once either of the endpoints is a demand, because even a polite demand, it could be the politest demand ever. It could be. Listen, I hate to bother you. I'm so sorry, but I'm going to need you to show me your waistband. And suppose the person whose approach says, I'd actually rather not. Is that OK? Don't know. Look, I mean, this is this is this is a demand. It's a very polite demand, but it's a demand. You're going to need to show me your waistband. Isn't it? That's a seizure. But I think what has within the facts of the court describing hypothetical, there's repetition with the question, which is something that this court focused on in in Maybury. And certainly the court can see in government's exhibit one that's in the record in this case, the nature of the one demand isn't enough. It's got to be, too. That's what we should write. I think that that is in in large part what this court did right in Maybury there. There's reference to the persistence of the questioning, and that is something that that's because persistence of questioning can turn an interaction and turn the words into a demand. But if the words are a demand in the first place, I don't know how it can be. That something is a demand and there's an option, the whole point of a demand is there's not an option, but there's not an option and there's a seizure. Assuming it is a demand and it is a seizure, was there reasonable articulable suspicion to support seizure? We think that there was reasonable articulable suspicion to support the seizure because Mr. Campbell did not submit until. All right, we're talking with respect to the first first, let me see until he has submitted to the officer's show of authority. There was not a seizure and the finding that the district court made was that. And because of that, I'm sorry, because of that, what the officer can see or knew at the time, there's that it's in a high crime area. And I agree walking away, walking away, not enough on its own for reasonable suspicion, but it is what the officer testifies. And I believe what the court found that was enough in this situation to bring the officer's attention to Mr. Campbell, because he was the only one that was backing away. So that just added to what was happening and then trying to conceal the act of trying to conceal something. So, yes. Why do we why do we count the even if we credit that it was an act of trying to conceal by adjusting his place before he pulls up his shirt? Why does that get to be added to the reasonable articulable suspicion calculus when the officer didn't know that because it hadn't happened yet? When he made the man. And just because he had not submitted yet, I find that I find that a notion pretty darn puzzling, I have to say, because then officer can come in full guns blazing and it can be the most emphatic command ever. Show me what's in your bag, you got to show me what's in your bag right now. And then the person is nervous and tries to put the bag behind their back. So, boy, and then you say, well, you're trying to conceal the bag. That's reasonable suspicion. Now, open the bag. It can't be that the fact that you create a reasonable suspicion by trying to conceal the bag in the face of a demand for which there is no reasonable articulable suspicion itself creates reasonable articulable suspicion. Look inside the bag. It is. I guess it's just. The fact that we're assuming that it's a demand, you know, the. And that he those are all of the factors, you know, that the high primary, the unusual mess of him backing up with his arms up the adjusting of. Yes, you know, that's the district court did not find that there was until the second time that Mr. Gamble was asked. Isn't the answer to judging about this question? Yes. I mean, the Supreme Court has held at the point of seizures when there's a submission to a show of authority and everything up until that point goes into the calculus for reasonable suspicion. That's the way the court has interpreted this and isn't that what happened in. I would agree with with your honor really so that the government's position, I want to make sure the government's position is that an officer gets to come up to a subject and just bring down holy reign terror. And then the way the person reacts itself creates suspicion. That's just what's the point of the 4th amendment? If you just get to walk up to somebody and and impose what's everybody would agree is an emphatic demand and then say, boy, if you're nervous. That creates suspicion. That's that's kind of extraordinary, isn't it? I guess I would, I would say, but we are the finding that we're defending here is that is judge Walton's finding, but I don't I agree with judge and that this is similar to and your honor. If I may, I just wanted to respond going back to your questions about the questions that were asked me where let me see your stack. Let me see your stack. There's a transcript of the questions laid out in the opinion. And so they are similar questions here. And so I think when I say persistence of questioning, those were also demands and the body camera is on file in that case. And it is what happened to me is quite different from this case. And I also would say maybe there's a there's a camera is the body where camera was was submitted as part of that. If the court would like to compare, and we also would be happy to provide it is interested. But if the court is inclined to disagree with that, they hope that your honors will, if I may, I know I'm over time to to to note that we would also argue that this is this case is distinguishable from Brody, which is this is the third third issue we brought up in our brief. And that so we're not asking to be clear that this court overrule. We understand that that is not something that this this panel could do. But we do think that the decision incentivizes people to interactions with police submit, or maybe briefly submit and then run and throw away weapons or contraband in a dangerous manner. And it's clear on government's exhibit one that's in the record in this case that when Mr gamble flag with the loaded firearm with one round in the chamber, he threw it against an apartment wall. It audibly hits the wall. You can hear that on the body camera. Thankfully, the gun didn't go off. However, it could have gone off and this, you know, in getting ready for argument, go back and look at some of the documents in the district court pocket admittedly to not raise this particular argument at this hearing. Refer to the dangerous council, I find this alternative argument quite extraordinary because a person running and throwing a gun is a very common factor that we see over and over again. And as a trial judge, I saw it over and over again, and the government is taking the position that every time that happens, any fourth amendment violation that took place before running and throwing the gun is first. I think that the position we're taking in this case is the way that Mr gamble fled in this case, where we have a loaded firearm at a building. So, it has to be at a building. I don't want to I'm just I'm limiting it to the facts because what we were arguing in this case, but I would say the general principle is that you think the government is taking the position. If a suspect runs and throws a gun, anything that happened before that any fourth amendment violation is the, I think it would depend on our positions. It would depend on the facts of the case. If the manner of flight or don't be dangerous. And that is something that this court did carve out in Brody manner of manner of flight admittedly generally way that the court was talking about leaving the vehicle. But there are. You could imagine a situation where somebody in running tosses a gun, perhaps onto grass or into a book. Maybe that in and of itself is not dangerous, but if you then have someone does that near school, but then you're asking us to adopt a standard that depends on where the gun lands. Not where I think it would still be a totality of the circumstances. And now it's, you know, all part of the 4th amendment totality circumstances. Whether the manner of flight was excuse yes, manner of flight was dangerous. Can I ask 1 question about the, I just want to make sure that you did argue in the brief that if the. 1st, let me see your waistband. The 2nd was a little bit different, I guess, but the 1st. Statement that the district or deemed to be a demand. That even if that is a demand, there was still reasonable to give a suspicion by the time of the seizure. Yeah, you did argue that if there was. I'm sorry, we argued that the district court didn't air and finding that the 2nd. Time fixing the point of seizure at the 2nd request. Was was that the court didn't Aaron doing that? So, not make that argument. In our as, as to the 1st, 1 as to the 1st of those. 2 statements with the 2nd on what the court. Yeah, by the time of the 2nd statement, I take it. Your point is that by the time of the 2nd statement, there was reasonable to give suspicion and there might well have been. Yes, and we would point the coordinate addition to the facts that we've been discussing to judge Walton's factual finding at 175. 181 in the in viewing the body on camera. Something was visible when. Yeah, and I guess what's come up in argument today is the possibility that. There might have been reasonable articulable suspicion that arose. Between the time of the 1st, but the district court called a demand and the time of what this. 2nd, what the district court called a demand and there would be a question as to whether that's. Seizure had occurred by then, because there had been no submission. Substantively to the demand. Yes, but our review is to know about correct. Our review of whether a seizure occurred is yes. And if there are no further questions. I think I want to just make sure that I understand. Your response to the chief judge in Boston's question. Because I believe that appellant. Pretty clearly makes an argument in his brief. That the seizure occurred earlier than the 2nd. Let me see your waste statement demand question, whether we want to call it. Did you argue in your brief? Even if you find that the seizure for earlier. After the 1st, let me see your waste. Statement demand question. That there was reasonable particular suspicion at that point. We did not argue that we argued. That the district court did not care. And finding that seizure occurred at the 2nd. Request, and we also went through. Each of the points of seizure that. That Mr. Gamble. So, you know, the fact that the officers arrived in cars and we're wearing uniform and we went through each of those. And discuss why there was no seizure. At those points. But we, and yeah, if the court has no further questions, you have 11 for the question. Sorry, just to give you a little bit longer. So, the, the statement by the district court twice calling the 1st. Let me see your waste and demand. Do you agree that that's a that's a finding of fact. I think that. I mean, those are the words supporting. I think that in view of the facts that the court was distinguishing this case for me. And that the language that is used in major was so similar in the sense that it was phrased as, let me see. That even if the court, this court use that finding as. The use of the word demand as a factual finding that that doesn't. Demand that this court then say that there was a seizure when that 1st. Demand with me. Okay, but you're not taking issue with the proposition that that was a finding of fact. In other words, I mean, I suppose. 1 could try to argue that. Whether it's a demand or not is a conclusion. And we look at the historical facts on the ground to figure out whether it, in fact, constitutes a demand necessary upshot of which. Could be that there was a seizure. It's supposed it could be viewed as. You know, to the extent that the court is that the district court was characterizing the. That that word is used to inform whether the district court was finding the police had made a show of authority that the conclusion that whether there was a show of authority necessary to trigger 4th amendment protections, then it could be viewed as. A legal finding. Okay, I think either way the court looks at it that we would say that that 1st. Demand was not a command. That that triggered 4th amendment. Yeah, I think the show of authority part would be a conclusion of law. The question. Whether it's a demand or not could be a factual predicate to whether there was a show of authority. The district judge did call it a demand more than 1 occasion. Yes, okay. Let me make sure my colleagues don't have additional. Thank you counsel. Thank you. 2 minutes for about. I first know that the government did not argue and the district court did not find that there was a seizure when. Mr gamble versus lifted his clothes and we'd ask the court this court to find that in that regard, the government has not carried his burden to establish that there's reasonable articulable suspicion at the time of. If the seizure is indeed earlier, but with regard to. The, the demand and the tone. I think Mendenhall is instructed because it says the use of language or. The tone of voice, those 2 things are different and the use of language is the demand. A demand or command or order. Is not converted into a question. Which is, which Mendenhall recognizes the tone of voice. And be harsh or can be kind, but. The tone of voice does not convert the words themselves into something different. You address this issue of what do we do about pulling up the pants? We count it or not count it towards reasonable suspicion and do you have any. Other authority on further reflect. With regards to pulling up the pants, the 1st thing that I would say is that the 4th amendment. The, the, the, the difficulty with this is that for the government, I think. Is it the 4th amendment allows people to keep things private that they want to. And the waste area is. So, to your point. If the, if officers arrive at a location and demand to see something. That is by all accounts. And people, I understand young people walk around and get. But that's a show of authority, not a seizure, right? It is a show of authority, but. Is. The court is asking whether his reaction to the show of authority. Can be considered. A reaction that is a reaction that does not have an innocent explanation reaction that is obstructive. Might not be something that should be considered. That is not the reaction that we have in this case. In this case, we have a reaction that is momentary brief. That is in the act of applying officer doesn't say I couldn't see. He doesn't say don't. Adjust your waste don't do anything else. There were not very specific instructions to. To that. That Mr gamble failed to obey. There's there's no testimony that he that he failed to do so. So if he had been told, let me see your waist. And he kneeled down to tie his shoe. And in the course of doing that, the officer glimpses. An ankle bolster or a gun. That could be counted towards and then he stands back up. And lifts his shirt or his jacket. We count the viewing. Of the ankle holster there, because he's not really that's not part of the submission. That's the way we're supposed to. Slice the baloney I'm not sure that. That it can be sliced so fine even there. Because again, that that's. There's not currently a standard for what. Constitutes noncompliance, I guess. And if that were interpreted, if the officer said. In those circumstances, that that was noncompliant to me. That was there was not some other innocent explanation for her time issue. That that that might be. The court, the district court may be able to find that that was noncompliance. But didn't the district court, but then the officer testify here and that was a, I think, brought up in earlier questions. And he thought that the pulling up the pants was. Suspicious and appeared to be concealing. Because that was done before he before he showed his ways. If we're going to be very precise. And, and if we have to hone in on exactly what. The officer believe what the officer couldn't couldn't see. The officer, I think we also have to be very precise on what the officer said. And the officer did not say that. It was noncompliant. He said. It's strange. That is it he did not say it was suspicious. He didn't provide, and I don't, I don't want to turn too much attention, but pulling up the pants is not something that is inherently suspicious. It's not suspicious in a high crime area. It is not. So, finding there was a factual finding that it was suspicious and this is concealing. Right. But. In order to make that factual finding, or I think. I'm not sure that that's a factual finding so much as a legal conclusion. Um, that it amounts to reasonable suspicion. In order to make that legal conclusion, you have to have objective facts. What are the objective facts it was adjusting the pants was. Criminal, because what there's not a single fact in this record that I identify. How adjusting the pants is criminal. It's. We're talking about concealing and then we're right back to this, this problem with the 4th amendment that allows people to conceal. The 4th, the 4th amendment allows people to keep things private that they want to keep private. So, if he adjusted his pants on again on the way. This isn't this isn't a case of, like. Open defiance later defiance. It's not a case of where the officer says, stop, come here and the person turns and runs in the opposite direction. This is all within the course in the course of complying with officers. So, there may be cases where. There is testimony that adjusting the waste was suspicious because. There was something holding the pants down because there was. Because in the officer's experience, every time that happens. I find the contraband. We don't there is no testimony. There is no evidence of that here. In fact, in this case, the officer says. I hate being a dead horse, but he provides the explanation that his pants were sagging. So he pulled them up. He provides the innocent explanation himself. It doesn't mean anything. You could conceal to say no. The subject could say, you know what I'm doing? I'm concealing my waistband. And, you know, why I'm considering my waistband because I don't want to show you my waistband. And that's if it's actually the client is in. When when the officer makes a demand without reasonable suspicion. And I think I think it's, it's incumbent on the government to establish reasonable suspicion. Before that point, and to the extent that there's a question about that, the government didn't carry its burden. So, there's no questions. Okay. Thank you. Council. Thank you to both council. We'll take this case under submission.
judges: Srinivasan, Wilkins, Pan